UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHON OWEN SHROYER<br>(A/K/A JONATHAN OWEN SHROYER),<br><br>Defendant. | Case No. 21-mj-572 (ZMF) |

### ADDENDUM ORDER

**I.    INTRODUCTION**

On August 19, 2021, the Court issued an arrest warrant for Jonathon Owen Shroyer (a/k/a Jonathan Owen Shroyer), "a Texas-based talk-show host associated with the website Infowars (www.infowars.com)." Statement of Facts at 3. The Department of Justice has recently updated its policies on the investigation of media members, noting the importance of a free press to a vibrant democracy. As part of its review, the Court inquired if the Department of Justice had complied with 28 C.F.R. § 50.10, ("Policy regarding obtaining information from, or records of, members of the news media"). The Department refused to provide an answer on the record. The Court issues this addendum opinion to ensure that the record accurately reflects: 1) the conversations between the Court and the Department of Justice; and 2) the Department's break with its prior practice of confirming its adherence to these regulations.[1]

---

[1] In response to a draft copy of this Addendum Order, the Department of Justice submitted the attached letter. It misses the mark. True, the Department of Justice retains the right to do what it wants with these regulations. However, this renders the Department of Justice's newfound silence no less concerning. The Department of Justice has volunteered such information in the past without any demonstrable harm to its own deliberative process. Moreover, the central question was not *how* they complied with the regulations, but *if* they did.

1

A.     Events of January 6th

On August 19, 2021, the U.S. Attorney's Office (USAO) submitted a criminal complaint, statement of facts, and arrest warrant (collectively, the "Complaint") against Shroyer. The Complaint alleges that Shroyer traveled to Washington, D.C., in advance of January 6, 2021, to publicly urge people to stop the certification of the Electoral College vote. *See* Statement of Facts at 3. The Complaint linked to a video on the Infowars website from a January 5, 2021, rally in which Shroyer "gave an address in Freedom Plaza in Washington D.C., during which he stated: 'Americans are ready to fight. We're not exactly sure what that's going to look like perhaps in a couple of weeks if we can't stop this certification of the fraudulent election . . . we are the new revolution! We are going to restore and we are going to save the republic!'" *Id.* In another video posted to the Infowars website on January 5, 2021, Shroyer "called into an Infowars live broadcast and said: 'what I'm afraid of is if we do not get this false certification of Biden stopped this week. I'm afraid of what this means for the rest of the month . . . Everybody knows election was stolen . . . are we just going to sit here and become activists for 4 years or are going to actually do something about this . . . whatever that cause or course of cause may be?'" *Id.*

The Complaint notes that Shroyer was featured in promotional material circulated by Infowars including a graphic of Shroyer and others in front of the Capitol building urging listeners to "Fight for Trump" on January 6, 2021. Statement of Facts at 3–4. Video footage from January 6, 2021, revealed that Shroyer marched to the U.S. Capitol from the Ellipse shortly before the mob breached the U.S. Capitol. *See id.* at 4. One video depicted Shroyer "marching with other individuals, leading a crowd of people in a '1776!' chant as the host of the Infowars show on which the video was streamed stated, 'Alex Jones at this moment is leading the march toward the Capitol building.'" *Id.* "In the same video, [Shroyer] can be heard telling the crowd, 'today we march for

2

the Capitol because on this historic January 6, 2021, we have to let our Congressmen and women know, and we have to let Mike Pence know, they stole the election, we know they stole it, and we aren't going to accept it!'" *Id.* Law enforcement's review of the videos further revealed that Shroyer entered the restricted area of the Capitol building. *See id.* at 4–6. In fact, Shroyer was "standing above the crowd on the west side of the Capitol next to the inauguration stage." *Id.* at 4. Later on January 6, 2021, Shroyer called into an Infowars broadcast from the Capitol grounds and stated that he was on "one side of the Capitol, so we can't see both sides, but on this side alone there's probably about 100,000 people. They've taken the Capitol grounds, they've surrounded the building itself, they're on the actual building structure. . . . We literally own these streets right now." *Id.* at 6.

### B. Prior Criminal Conduct

On December 9, 2019, law enforcement removed Shroyer from the Capitol building and arrested him after he disrupted a House Judiciary Committee proceeding. Statement of Facts at 2. On January 17, 2020, Shroyer was charged by an Information in the Superior Court of the District of Columbia, Case No. 2020 CMD 000820, with a violation of D.C. Code Ann. § 10-503.16(b)(4), Disorderly and Disruptive Conduct on United States Capitol Grounds, and D.C. Code Ann. § 10-503.16(b)(7), Parading, Demonstrating, or Picketing on United States Capitol Grounds, based on this incident.

On February 25, 2020, Shroyer entered into a Community Service Deferred Prosecution Agreement ("DPA"). Pursuant to the DPA, Shroyer agreed to abide by certain standard and special conditions during a four-month deferment period as enumerated in the agreement. As part of the DPA conditions, Shroyer agreed not to violate any laws and to perform 32 hours of verified community service. The DPA included the following special conditions:

1. The defendant agrees not to utter loud, threatening, or abusive language, or to engage in any disorderly or disruptive conduct, at any place upon the United States Capitol Grounds or within any of the Capitol Buildings with intent to impede, disrupt, or disturb the orderly conduct of any session of the Congress or either House thereof, or the orderly conduct within any such building of any hearing before, or any deliberations of, any committee or subcommittee of the Congress or either House thereof.

2. The defendant agrees not to parade, demonstrate, or picket within any of the Capitol Buildings.

3. The term "Capitol Buildings" means the United States Capitol, the Senate and House Office Buildings and garages, the Capitol Power Plant, all subways and enclosed passages connecting 2 or more of such structures, and the real property underlying and enclosed by any such structure.

Statement of Facts, Exhibit A, at 5. In addition, the term "United States Capitol Grounds" was defined to include an area delineated in a map attached to the DPA spanning the Capitol grounds from 3rd Street NW on the west side of the Capitol building, to 2nd Street SE on the east side of the Capitol building. The Complaint alleges that Shroyer was still subject to the DPA as of January 6, 2021, because Shroyer had not yet completed, nor reported his community service hours. *See* Statement of Facts at 3.

    C.    <u>Statutory Violations</u>

In its August 19, 2021, Complaint, the USAO submitted that there was probable cause to believe that on January 6th, Shroyer violated 18 U.S.C. §§1752(a)(1)–(2), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so, and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires

4

to do so. For purposes of § 1752, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting, or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

The USAO further submitted that there was probable cause to believe that on January 6th, Shroyer violated 40 U.S.C. §§ 5104(e)(2)(D)–(E), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings.

    D.    <u>Inquiry by the Court</u>

On August 19, 2021, the undersigned had a telephone conference with representatives of the USAO regarding the Complaint. The undersigned inquired as to whether:

- the Department of Justice considered Shroyer to be a member of the media;
- the USAO had complied with Department of Justice policies regarding the arrest of media members; and
- the Assistant U.S. Attorneys would memorialize the answers to these two questions in the Complaint, consistent with their prior practice.

The USAO represented that it had followed its internal guidelines but was unwilling to memorialize that or explain the bases for its determinations. The Court issues this addendum

opinion in response to the USAO's break with prior practice, and to ensure that the judicial record accurately reflects: 1) the conversations between the Court and the USAO; and 2) the undersigned's understanding of the steps taken by the Department to comply with 28 C.F.R. § 50.10.

## II.   STANDARD

"The Supreme Court has noted that, when it comes to criminal process, the freedoms guaranteed by the First Amendment should be guarded with 'scrupulous exactitude.'" *United States v. Purse*, 21-mj-00475, ECF 1 at *3 (D.D.C. June 15, 2021) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978)). Indeed, on July 19, 2021, Attorney General Merrick Garland strengthened the Department of Justice's policies to protect journalists based on the premise that "a free and independent press is vital to the functioning of our democracy." Memorandum from Attorney General Merrick Garland on Use of Compulsory Process to Obtain Reporter Information From, or Records of, Members of the News Media to the Department of Justice 1 (Jul. 19, 2021), https://www.justice.gov/opa/pr/doj-formally-adopts-new-policy-restricting-use-compulsory-process-obtain-reporter-information. The Department of Justice's regulations further recognize: "Because the freedom of the press can be no broader than the freedom of members of the news media to investigate and report the news, the Department's policy is intended to provide protection to members of the news media from certain law enforcement tools . . . that might unreasonably impair newsgathering activities." 28 C.F.R. § 50.10(a)(1). The regulations therefore forbid seeking an arrest warrant for "a member of the news media for any offense that he or she is suspected of having committed in the course of, or arising out of, newsgathering activities without first providing notice to the Director of the Office of Public Affairs and obtaining the express authorization of the Attorney General." 28 C.F.R. § 50.10(f)(2).

## III. ANALYSIS

The Department of Justice's prior practice in dealing with members of the media informs this Court's decision. In *Purse*, the USAO requested an arrest warrant for a person who entered the Capitol on January 6, 2021 "wearing a black tactical vest with the words 'PRESS' on his chest and back[ ] and a black helmet with the words 'PRESS' on either side, and carrying 'a long black pole, with what appear[ed] to be a recording device at the end of the pole." 21-mj-475, ECF 1 at *1 (cleaned up). The statement of facts included a footnote asserting that, "as part of this investigation, the affiant could not identify [Purse] as being associated with the press or having possessed press-credentials related to the U.S. Capitol." *Id.* at 3. (cleaned up). The Court initially rejected this warrant request because, "there [was] little to indicate that the government ha[d] considered [Department of Justice] policy or the values protected by it." *Id.* The USAO subsequently submitted a complaint with additional facts which specifically addressed why the government believed that Purse was *not* a member of the press. *See Purse*, 21-mj-475, ECF 2-1 at 2 n.1.[2] Based on this showing, the Court approved the requested arrest warrant.

A recently unsealed application also reveals the USAO's prior willingness to assure this Court that the it had followed the Department of Justice's media guidelines. *See In re Sealed*

---

[2] The revised complaint stated: "Your affiant does not believe that PURSE is a member of the press media or associated with having press credentials related to the U.S. Capitol. On or about January 11, 2021, FBI received information from a confidential source ("CS"), who saw PURSE on a livestream on Twitch, a livestreaming platform, believed to be taken on January 6, 2021. During the livestream, PURSE, wearing the above helmet, "seems to admit he is not with press." The CS further described PURSE stating to the camera, "Mission accomplished, we broke into the Capitol." The video has been since deleted. Your affiant confirmed that prior to or on January 6, 2021, PURSE did not receive any credentials from the Capitol, which allowed members of the news media access to areas inside of the Capitol. Moreover, your affiant could not find any employment history for PURSE for the last six years while PURSE has resided in California, or any employment history ever related to any news media organization. Although PURSE has a website, the website appears to be primarily used for livestreaming and does not contain original content. The website also includes a private forum for discussions." *Id.*

7

*Application*, 20-sc-3355, ECF 1 at *2 n.3 (D.D.C. December 22, 2020), available at https://www.dcd.uscourts.gov/file/cleaned-application-7-9-21-redactedpdf.  The USAO stated there, "Prior to seeking this process, the undersigned has consulted with the National Security Division of the U.S. Department of Justice and complied with the requirements of 28 C.F.R. § 50.10 ('Policy Regarding Obtaining Information from, or records of, members of the news media')". *Id.*

Yet here the government is unwilling to address its compliance with its internal regulations regarding the press.  When questioned by the Court, the USAO's representatives respectfully stated that they had followed such guidelines but would not formally state this in their pleadings; nor would they memorialize the reasons underlying their determination that Shroyer was not "a member of the news media" who had committed the instant offenses "in the course of, or arising out of, newsgathering activities." 28 C.F.R. § 50.10(f)(2).  The events of January 6th were an attack on the foundation of our democracy.  But this does not relieve the Department of Justice from following its own guidelines, written to preserve the very same democracy.

Shroyer's January 2020 arrest gave him clear notice that he could not engage in disruptive and riotous behavior at the Capitol Building and Grounds.  Yet beginning on January 5, 2021, Shroyer began urging others to join him in protest at the Capitol Building and Grounds premised on the false claim that the election was "stolen." Statement of Facts at 3.  This conduct continued on January 6, 2021, when Shroyer made additional statements urging on the mob and personally entering the restricted area of the Capitol building in brazen defiance of his DPA.  *See* Statement of Facts at 4–6.  His stated goal was clear: to stop former Vice President Pence from certifying the election by "tak[ing] the Capitol grounds". *Id.* at 6.  Shroyer described his personal role in the riot: "We literally own these streets right now." *Id.* at 6.  On January 6th, Shroyer was "aid[ing],

conspir[ing] with, plan[ning], or coordinat[ing] riotous actions." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021).

## IV. CONCLUSION

The undersigned finds there was probable cause to believe Shroyer committed the above-described violations.

As to the question of whether and how the Department of Justice complied with its policies, the court received an unsatisfactory answer. Yet even if a credentialed journalist engaged in the instant conduct, there would be no question of probable cause for arrest.

The Department of Justice appears to believe that it is the sole enforcer of its regulations. That leaves the court to wonder who watches the watchmen.

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE