UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Dkt. No.: 1:21-cr-00542-TJK |
| v. | : | |
| | : | |
| JONATHAN OWEN SHROYER. | : | May 6, 2022 |

**STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S SECOND MOTION TO DISMISS**

The Defendant, Jonathan Owen Shroyer, is being prosecuted by the United States government for engaging in Constitutionally-protected expression—specifically the rights to protest, speak freely and report the news. A journalist, Mr. Shroyer attended the "Stop the Steal" rally in Washington D.C. on Jan. 6, 2021 with the intent to cover the event for his daily broadcast, the War Room, on the Infowars platform. Accordingly, all four charges against him should be dismissed.

**FACTUAL ALLEGATIONS**

The Defendant is a nationally syndicated television host and journalist for Infowars.com. He hosts a daily television show called "The War Room With Owen Shroyer," and he has regularly comments on national news, including the 2020 presidential election, and he advocated for inquiries into whether that election had been fairly conducted. The United States seeks to prosecute him for his involvement in the January 6, 2021 protests against the certification of the Electoral College votes from the 2020 presidential election.

**Pre-January 6, 2021 Statements:**

The United States has selectively culled Shroyer's statements to fit its Robespierrian portrayal of him.

1

First, it quotes from Shroyer's speech at Freedom Plaza on January 5, 2021 where it alleges that he said "Americans are ready to fight, We're not exactly sure what that's going to look like perhaps in a couple of weeks if we can't stop this certification of the fraudulent election… we are the new revolution! We are going to restore and we are going to save the republic!" *Id.* at p. 3.

Second, it points to his comments on an Infowars live broadcast on January 5, 2021:

> what I'm afraid of is if we do not get this false certification of Biden stopped this week. I am afraid of what this means for the rest of the month… Everybody knows election was stolen … are we just going to sit here and become activists for 4 years or are going to actually do something about this… whatever that cause or course of cause may be?

*Id.* at p. 3.

Third, it focuses on his appearance in Infowars promotional material advertising protest marches on January 5th and 6th, 2021 in Washington, D.C. where he is featured on a poster asking people to "Fight for Trump." *Id.* at pp. 3-4.

**January 6, 2021 Statements:**

The United States focuses on two statements that Shroyer made on January 6, 2021.

First, it points to his comments to protestors marching toward the United States Capitol building from the Ellipse: "today we march for the Capitol because on this historic January 6, 2021, we have to let our Congressmen and women know, and we have to let Mike Pence know, they stole the election, we know they stole it, and we aren't going to accept it!" *Id.* at p. 4.

Second, the United States points to a statement Shroyer made when he called into an Infowars broadcast to report on what was happening at the protests. Shroyer explains that he "got to the Trump rally at about 8:00 AM" and then "marched to the Capitol." Shroyer then stated that he was on "one side of the Capitol, so we can't see both sides, but on this side alone there's probably about 100,000 people. They've taken the Capitol grounds, they've surrounded the building itself, they're on the actual building structure… We literally own these streets right now." *Id.* at p. 6.[1]

**<u>Shroyer's Alleged Conduct:</u>**

The United States' factual allegations as to Shroyer's conduct occupy a mere two paragraphs in the seven-page affidavit in support of the arrest warrant:

> I have viewed another video posted to Infowars that purports to be video from the body worn camera of a security detail member from January 6, 2021. The footage depicts SHROYER within the restricted area on both the west and east sides of the Capitol.
>
> I am aware of other videos and photos depicting SHROYER in the restricted area of the U.S. Capitol on January 6, 2021. For example, the FBI received a video from an anonymous tip that depicts SHROYER at the top of the stairs on the east side of the Capitol. At one point the video, the camera zooms in and a voice can be heard exclaiming "well there's… and Owen Shroyer up there.

*Id.* at p. 6.

**<u>Shroyer's Intent</u>**

Shroyer, in an affidavit annexed hereto as Exhibit A, asserts that he went to Washington D.C. with Alex Jones and Infowars personnel on Jan. 6 to attend and report on the "Stop the Steal" rally. He accompanied Alex Jones to the podium

---

[1] The United States purports to cite a video from Infowars to quote Shroyer's interview, but the video that it cites does not contain the quote that it seeks to pin on Shroyer.

3

when then-President Donald Trump was speaking. Shroyer was under the impression that they were to follow Trump to the U.S. Capitol. He and Jones were traveling with security detail. When Trump did not appear to lead Shroyer and Jones' group, Shroyer followed Jones and his security detail from the podium toward the Capitol. Shroyer did not see any barriers or other impediments that suggested they were not permitted to enter the Capitol grounds. When the crowd grew unruly, Jones tried to deter others from acting in a disorderly manner. Shroyer and Jones met a line of police officers on the steps of the Capitol. The officers did not tell them that they were trespassing and actually directed Shroyer and Jones' group to an entrance to the Capitol. Jones urged the crowd to disperse. After Jones spoke, he and Shroyer left the area. Shroyer did not enter the Capitol.

## ARGUMENT

I.   **Legal Standard:**

Federal Rule of Criminal Procedure 12 gives a criminal defendant the right to move to dismiss an indictment or an information on any grounds that the Court can determine without a trial on the merits. Whether a statute is unconstitutional either facially or as applied to a defendant is a proper ground for a motion to dismiss. *See United States v. Bronstein*, 151 F. Supp. 3d 31 (D. D.C. 2015). When considering a motion to dismiss an indictment or an information, "a court assumes the truth of [its] factual allegations." *United States v. Ballestas*, 795 F.2d 138, 149 (D.C. Cir. 2015).

II.  **Analysis**

The First Amendment permits and protects the rights of individuals to assemble and engage in demonstrations that confront and criticize the government, even when

4

those demonstrations become rowdy or unruly. The United States Supreme Court noted in *Terminiello v. Chicago,* 331 U.S. 1 (1949) that

> Accordingly, a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute [citation omitted] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

The defendant in that case was convicted of disorderly conduct after he gave a speech to a large audience in an auditorium while an "angry and turbulent" crowd protested outside. The speaker inside denounced the outside crowd and also criticized various racial and political groups. *Id.* at 3. The statute at issue, and the trial court's charge, "permitted a conviction if the speech stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id.* at 5. The Court held the statute unconstitutional as applied to the defendant.

Also illustrative is *Texas v. Johnson,* 491 U.S. 397 (1989). The defendant was part of a group protesting the 1984 Republican National Convention in Dallas, TX. Demonstrators marched, chanted, staged "die-ins," sprayed graffiti and broke potted plants, among other items. The defendant soaked an American flag in kerosene and lit it on fire. He was arrested and subsequently convicted of desecrating the flag, in violation of Texas statute. *Id.* at 399. The Court noted that the First Amendment protects not only spoken and written words, but also non-verbal conduct. *Id.* at 404. Whether conduct contains communicative elements to invoke First Amendment protections depend on whether there was an intent to convey a particular message and the likelihood that that

5

the message would be understood by those who heard it. *Id.* The Court, in reversing the conviction, held that the defendant was convicted of engaging in expressive conduct and that "the state's interest in preventing breaches of the peace does not support his conviction because [his] conduct did not threaten to disturb the peace." *Id.* at 420.

The Court has consistently upheld the First Amendment rights of protestors, even as the demonstrations themselves crossed boundaries or exceeded time restrictions. See *Gregory v. Chicago*, 394 U.S. 11 (1969).

News reporters and broadcasters often put themselves into harm's way to cover political demonstrations. Robust public discourse requires free and unrestrained media. In *New York Times v. Sullivan,* 403 U.S. 713, 717 (1971), Justice Black opined

> In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy. The press was to serve the governed, not the governors. The Government's power to censor the press was abolished so that the press would remain forever free to censure the Government. The press was protected so that it could bare the secrets of government and inform the people. Only a free and unrestrained press can effectively expose deception in government.

(Black, J. *concurring.*)

The government has charged Mr. Shroyer with violating four criminal statutes: 18 U.S.C. § 1752(a)(1), 18 U.S.C § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(E). As the conduct for which he is being prosecuted amounted to Constitutionally-protected expression, all charges are unconstitutional as applied to him and should therefore be dismissed.

### 1. Count One – 18 U.S.C. § 1752(a)(1):

A person violates 18 U.S.C. § 1752(a)(1) by (1) knowingly (2) entering or remaining in (3) any restricted building or grounds (4) without lawful authority to do so.

6

Mr. Shroyer attended the rally and approached the Capitol to participate in legitimate news reporting and commentary on Jan. 6. He accompanied Alex Jones, a member of the media, to report on an event at which the then-president spoke. In addition to the building and grounds not appearing to be restricted and Mr. Shroyer not knowing of any such restriction, he was there in exercise of his First Amendment rights.

### 2. Count Two – 18 U.S.C § 1752(a)(2):

A person violates 18 U.S.C. § 1752(a)(2) by (1) knowingly (2) and with intent to impede or disrupt the orderly conduct (3) of Government business or official functions, (4) engages in disorderly or disruptive conduct (5) in, or within such proximity to, (6) any restricted building or grounds (7) when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions.

Mr. Shroyer did not engage in disorderly or disruptive conduct or having any intent to do so. He had a right to be present at the rally as both a citizen and a journalist. His intent was not to disrupt but to gather information for the purpose of reporting and commenting on it for his broadcasts.

### 3. Count Three – 40 U.S.C. § 5104(e)(2)(D):

A person or a group of individuals violates 40 U.S.C. § 5104(e)(2)(D) by (1) willfully and knowingly (2) utter loud, threatening, or abusive language, or engaged in disorderly or disruptive conduct, (3) at any place in the Grounds or in any of the Capitol Buildings (4) with the intent to impede, disrupt, or disturb (5) the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress.

Again, Mr. Shroyer was at the rally and approached the Capitol to observe the events and also to gather information to use in his reporting. Any statements that he made constituted protected political speech.

### 4. Count Four – 40 U.S.C. § 5104(e)(2)(E):

A person or a group of individuals violates 40 U.S.C. § 5104(e)(2)(E) by (1) willfully and knowingly (2) obstructing or impeding (2) passage through or within the Capitol Grounds or any of the Capitol Buildings.

There is no evidence that Mr. Shroyer obstructed or impeded passage through the Capitol grounds or its buildings. To the extent that he was present on Capitol grounds, it was as part of a political demonstration. He did not engage in violence or in any attempt to impede or obstruct but mainly observed. As a journalist, he had an obligation to be close to the action.

## **CONCLUSION**

For the foregoing reasons, all criminal charges against the Defendant should be dismissed.

> THE DEFENDANT
> /s/ Norman A. Pattis /s/
> NORMAN A. PATTIS, ESQ.
> PATTIS & SMITH, LLC
> 383 Orange Street
> New Haven, CT 06511
> Tel:  (203) 393-3017
> Fax: (203) 393-9745
> npattis@pattisandsmith.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

<u>/s/ Norman A. Pattis /s/</u>