UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-542-TJK |
| v. | : | |
| | : | |
| JONATHON OWEN SHROYER | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

Defendant Jonathon Owen Shroyer alleges that the government has prosecuted him for engaging in constitutionally protected expression at the United States Capitol on January 6, 2021, and, accordingly, seeks dismissal of all charges. ECF No. 23. Shroyer's arguments lack merit and his motion should be denied.

BACKGROUND

Shroyer is charged by criminal information with one count each of: (1) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (3) disorderly conduct on Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) obstructing or impeding passage through or within Capitol Grounds, in violation of 40 U.S.C. § 5104(e)(2)(E). ECF No. 5.

These charges stem from Shroyer's conduct[1] within the U.S. Capitol Grounds on January 6, 2021, as a Joint Session of Congress convened in the Capitol to certify the 2020 U.S. Presidential

---

[1] A full accounting of the facts in this case can be found in the Government's Opposition to Defendant's Motion to Dismiss and for a *Franks* Hearing. ECF No 11, at 1-13.

1

Election.  The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage.

Early that afternoon, crowds began to converge on the Capitol.  Shroyer stood in front of one crowd with a megaphone and shouted, "And so now the Democrats are posing as communists, but we know what they really are: they're just tyrants, they're tyrants.  And so today, on January 6, we declare death to tyranny!  Death to tyrants!"  Eventually, Shroyer learned that individuals had breached the Capitol itself, and he stated that he was headed to the Capitol: "[W]e have to let our Congressmen and women know, and have to let Mike Pence know, they stole the election, we know they stole it, and we aren't going to accept it."  Shroyer continued shouting to the crowd as he walked.

Before the Joint Session began at 1:00 p.m., a large crowd of individuals had assembled around the Capitol grounds and violently disassembled and trampled metal barriers that had prominent signs reading, "AREA CLOSED By order of the United States Capitol Police Board." Outside the Capitol, between 12:53 and 2:00 p.m., law enforcement struggled to maintain control of the growing crowd. Crowd members eventually forced their way through, up, and over additional barricades and advanced to the building's exterior façade.  During this time, Capitol Police officers attempted to maintain order and stop the crowd from entering the Capitol.

During this time, and after the Joint Session convened at 1:00 p.m., Shroyer entered the restricted area of the Capitol Grounds.  He first positioned himself on the west side, stood on stacks of chairs and equipment, and led the crowd in chants of "USA!  USA!  USA!"[2]  Someone near Shroyer took to a megaphone and warned of the violence that was occurring around them: "Provocateurs have caused the problem, and the police are throwing flash bangs.  We don't want

---

[2] *See* ECF No. 1 at 4 n.6 (citing https://banned.video/watch?id=5ff9df636756f238a5bf9124).

2

to have a Kent State here." Later, individuals can be seen scaling part of the Inauguration stage, and the same individual yells through the megaphone, "everybody, get off that building now!"



*Figure 1: Shroyer on Restricted Grounds*

Shroyer and others then walked along the Capitol lawn and around the north side of the building. As Shroyer and his group marched around the Capitol, another individual stated, "Here's an opening right here." Shroyer and his group then walked toward where that individual pointed, passing downed and moved temporary barricades and stepping over at least one fallen sign that appeared to read "Area Closed," as seen below circled in red.



*Figure 2: "Area Closed" Sign Shroyer and Others Stepped Over*

3

Soon after stepping over the above sign, the individual (equipped with a camera) turned around and showed Shroyer, among others, walking with him on the restricted Capitol Grounds.



Figure 3: Shroyer and Group Soon After Stepping Over "Area Closed" Sign

En route to the east side of the Capitol, another individual stated to Shroyer and his group, "one DC cop just went down. One DC cop they just had to carry him off . . . so, be careful." Another individual later says, "there may be a fight going on over there." A purported security guard in this group engaged uniformed officers about having someone talk to the crowd and deescalate the situation, eventually stating to his group including Shroyer, "Just get him up there? Hey . . . just get him up there? Just do it? But we know we might catch a bang or two." Around this same time, explosions can be heard nearby.

Shroyer and the group continue forward and walk onto the Capitol's east steps, snaking through hundreds of other rioters. Near the top of the steps, Shroyer used his megaphone to lead the crowd in chants of "USA!" and "1776!"[3]

---

[3] *See* ECF No. 1 at 4 n.6 (citing https://banned.video/watch?id=5ff9df636756f238a5bf9124).

4



*Figure 4: Shroyer on East Capitol Steps*

## ARGUMENT

Shroyer argues that prosecuting him for his January 6 conduct violates the First Amendment. Shroyer also argues that, as journalist, he had a right to enter the Capitol that day. These challenges fail.

**I.    Legal Standard**

"To prevail on an as-applied First Amendment challenge," a defendant "must demonstrate that the statute is unconstitutional as applied to his particular expressive activity." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). The Court must "first assess whether [the defendant's] conduct is, in fact, expressive, and then determine whether the challenged statute 'is related to the suppression of free expression.'" *Id.* (citing *Texas v. Johnson*, 491 U.S. 397, 403, (1989)). If the statute is not related to expression, then the less stringent standard the Supreme Court announced in *United States v. O'Brien,* 391 U.S. 367, 377 (1968)), for regulation of noncommunicative conduct controls. *Caputo*, 201 F. Supp. 3d at 71. That test has four prongs:

5

first, the challenged regulation must be "within the constitutional power of government"; second, it must "further[ ] an important or substantial government interest"; third, this interest must be "unrelated to the suppression of free expression"; and fourth, the incidental restriction on First Amendment freedoms must be "no greater than is essential to the furtherance of that interest." *Id.* (citing *O'Brien,* 391 U.S. at 377).

**II.     Shroyer's prosecution does not violate the First Amendment.**

Shroyer first contends that "the conduct for which he is being prosecuted amounted to Constitutionally-protected expression." ECF No. 23-1, at 6. This claim fails.

**A.     Shroyer's offense conduct did not involve constitutionally protected expression.**

Shroyer's alleged offense conduct is not protected by the First Amendment.

Two charges carry specific-intent elements. Under 18 U.S.C. § 1752(a)(2), the government must show that Shroyer acted "with intent to impede or disrupt the orderly conduct of Government business or official functions." Similarly, under 40 U.S.C. § 5104(e)(2)(D), the government must show that Shroyer acted with "the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress." As this Court has previously observed, conduct done with the "inten[t] to obstruct Congress's performance of its constitutional duties … is simply not protected by the First Amendment." *United States v. Nordean*, No. 21-cr-175, 2021 WL 6134595, at *13 (D.D.C. Dec. 28, 2021); *see also United States v. Gregg*, 226 F.3d 253, 267-68 (3d Cir. 2000) ("Activities that injure, threaten, or obstruct are not protected by the First Amendment, whether or not such conduct communicates a message."); *see generally United States v. Giampietro*, 475 F. Supp. 3d 779, 792 (M.D. Tenn. 2020) (rejecting First Amendment challenge to 18 U.S.C. § 1519; the statute "regulates conduct, not speech, and the conduct it regulates – destruction of documents with the intent to obstruct a federal investigation – is not expressive")

6

(cleaned up); *Gregory v. City of Chicago,* 394 U.S. 111, 118, (1969) (Black, J., concurring) ("Plainly, however, no mandate in our Constitution leaves States and governmental units powerless to pass laws to protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of spots … for public and other buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals.")

The government has further charged Shroyer with "obstruct[ing], or imped[ing] passage through or within, the Grounds or any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(E). Such conduct likewise does not involve expressive activity. *See Cameron v. Johnson*, 390 U.S. 611, 617 (1968) (statute prohibiting the "obstruct[ion] or unreasonabl[e] interfer[ence] with ingress or egress to or from the courthouse … does not abridge constitutional liberty"); *Cox v. Louisiana*, 379 U.S. 536, 555 (1965) (First Amendment does not allow a "group of demonstrators" to "insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations"); *United States v. Falk*, 479 F.2d 616, 620 n.5 (7th Cir. 1973) ("There is no constitutional right to obstruct the passage of others."); *cf. Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000) (stating, in discussion of permissible regulations on expressive activity in the Capitol building, "[t]he police could properly use the statutory standards of Section 193f(b) itself to control, for example, groups of people praying in a way that impeded or obstructed passageways, hearings or meetings, involved loud, threatening or abusive language or physical violence, or was otherwise disorderly or disruptive," even though activity of the plaintiff in that case was none of these).

With respect to the last charge, Judge Cooper concluded in *Caputo* that the act of entering White House property, in violation of 18 U.S.C. § 1752(a)(1), might carry an expressive component. *See* 201 F. Supp. 3d at 71. So too here Shroyer's act of unlawfully entering the

Capitol's restrictive area could be "communicative in nature." *Id*. But even accepting that "th[is] charged conduct had some expressive aspect, it lost whatever First Amendment protection it may have had" when the crowd turned violent. *Nordean*, 2021 WL 6134595, at *13; *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("[W]here demonstrations turn violent, they lose their protected quality as expression under the First Amendment."); *United States v. Bingert*, No. 1:21-cr-91, 2022 WL 1659163, at *14 (D.D.C. May 25, 2022) (rejecting First Amendment challenge to Section 1752(a)(1) charge on this basis).

Shroyer's citation to *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), is inapposite. The Supreme Court in *Terminiello* held that the challenged city ordinance was impermissibly broad and infringed on the First Amendment because it "permitted conviction of [the defendant] if *his speech* stirred people to anger, invited public dispute, or brought about a condition of unrest." *Id*. at 5 (emphasis added). The charged statutes in this case, by contrast, do not even reference speech—much less prohibit speech that evokes a particular audience reaction.

Because the charged conduct here does not implicate protected First Amendment expression, Shroyer's challenge fails at the outset.

**B.     In the alternative, Shroyer's prosecution under the charged statutes comports with the First Amendment.**

Even assuming some aspect of Shroyer's conduct constitutes expressive First Amendment activity, the government's decision to prosecute him under the charged statutes passes muster under *O'Brien*. *See* ECF 11 at 24-25.

First, the four violations of law charged here are "within the constitutional power of the government." *O'Brien*, 391 U.S. at 377. Shroyer does not (and cannot) contest the government's right to prohibit trespassing, disorderly conduct, or physical obstructions on its property.

8

Second, "when speech and nonspeech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 376 (cleaned up). As this Court has noted, "[t]he Government has a weighty interest in protecting Congress's ability to function without 'corrupt' interference." *Nordean*, 2021 WL 6134595, at *14; *see also Caputo*, 201 F. Supp. 3d at 72 (noting "the Government's profound interest in protecting the White House complex, the President, and the functionality of the executive branch"). That interest reached its apex on January 6 when "Congress was convened in Joint Session to undertake one of its most solemn and constitutional duties." *Nordean*, 2021 WL 6134595, at *14.

Third, this Court has recognized that these interests are "unrelated to the suppression of free expression." *O'Brien*, 391 U.S. at 377. In denying Shroyer's vindictive-prosecution claim, the Court noted: "Nor do the four crimes that [Shroyer] is charged with turn on the content of [his] potentially expressive actions." Hrg. Tr. 15 (ECF No. 17). Rather, the charged statutes ensure the protection and normal functioning of the Congress.

Fourth, applying the charged statutes to Shroyer's conduct imposes no more than an "incidental limitation[] on First Amendment freedoms." *O'Brien*, 391 U.S. at 376. As explained above, the statutes predominately (if not exclusively) regulate unprotected activities. *See* pp. 4-6, *supra*. And the statutes "leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). "Quite obviously, there were many avenues for [Shroyer] to express [his] opinions about the 2020 presidential election, or [his] views about how Congress should perform its constitutional duties on January 6." *Nordean*, 2021 WL 6134595, at *14.

One final point: Shroyer repeatedly disputes the government's allegations that he engaged in certain conduct (*e.g.*, "Mr. Shroyer did not engage in disorderly or disruptive conduct" and "[t]here is no evidence that Mr. Shroyer obstructed or impeded passage") or harbored certain intent (*e.g.*, "Mr. Shroyer [did] not know[] of any such restriction" and "[h]is intent was not to disrupt") on January 6.  ECF No. 23-1, at 7-8.  These factual disputes will be resolved at trial.  They are inappropriate bases to seek dismissal of the information. *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Ketanji Brown Jackson, J.) ("When testing the sufficiency of the charges in an indictment … the allegations therein must be accepted as true.") (cleaned up).

### III. The First Amendment inquiry does not change based on Shroyer's asserted journalistic activities.

Shroyer separately observes that "news reporters and broadcasters often put themselves into harm's way to cover political demonstrations" and that "[r]obust public discourse requires free and unrestrained media."  ECF No. 23-1, at 6.  These observations do not provide Shroyer with any additional First Amendment protections to deploy here.  He had no right to enter any restricted area of the Capitol on January 6.  *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").  And Shroyer's claimed status as a journalist does not immunize him from criminal prosecution. *See id*. at 683 ("[T]he publisher of a newspaper has no special immunity from the application of general laws.") (quoting *Associated Press v. NLRB*, 301 U.S. 103, 132 (1937)).

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: \_\_\_/s/_____
KIMBERLY L. PASCHALL
D.C. Bar No. 1015665
TROY A. EDWARDS, JR.
N.Y. Bar No. 5453741
Assistant United States Attorneys
Capitol Siege Section
601 D Street, N.W.,
Washington, D.C. 20530
202-252-2650
Kimberly.Paschall@usdoj.gov