**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 1:21-cr-00542-TJK |
| v. | : | |
| | : | |
| JONATHAN OWEN SHROYER. | : | SEPTEMBER 5, 2023 |

**DEFENDANT'S SENTENCING MEMORANDUM**

On June 23, 2023, Mr. Shroyer entered a plea of guilty to one count of Entering and Remaining in a Restricted Building or Grounds in violation of 18 USC Section 1752(a)(1). Presentence Report, hereinafter "PSR," para. 4. The open counts at the time of the plea were, and remain, Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 USC Section 1752(a)(2); Disorderly Conduct on Capitol Grounds, in violation 40 USC Section 5104(e)(2)(d); and Obstruct[ing] or Imped[ing] Passage Through or Within Capitol Grounds, in violation of 40 USC Section 5104(e)(2)(E). PSR, para. 1. As a condition of Mr. Shroyer's guilty plea, the Government will move to dismiss the open counts. PSR, para. 8.

All the counts pertain to allegations arising from Mr. Shroyer's conduct at the Capitol on January 6, 2023, where video shows he entered restricted grounds during the chaos of that day. The count of conviction is a misdemeanor.

Mr. Shroyer submits this memorandum in support of his request for a sentence imposing no period of incarceration and no fine.

### I.    The Guidelines

The United States Sentencing Guidelines are no longer mandatory, they are advisory in nature, and the Court must consider them in imposing a sentence. *United States v. Booker*, 543 U.S. 2220, 245-246 (2005.) The sentencing Court is required to

1

consider the guidelines range, and then consider the factors laid out in I8 United States Code Section 3553(a). It is the Court's responsibility to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of Section 3553(a). *Rita v. United States*, 551 U.S. 338, 347 (2007).

## II.      Sentencing Factors

Section 3553(a) requires consideration of the following factors:

- The nature and circumstances of the offense and the history and characteristics of the defendant (subsection (a)(1));

- The need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment (subsection (a)(2)(A));

- The need for adequate deterrence to criminal conduct (subsection(a)(2)(B));

- The need to protect the public from further crimes by the defendant (subsection (a)(2)(C));

- The effort to assure rehabilitation of the defendant by such services as the Bureau of Prisons may provide (subsection (a)(2)(D)).

## III.     The Guilty Plea

Mr. Shroyer waived indictment in this case and thereafter pleaded to the single count of conviction. Although he filed a motion to dismiss raising claims that his status as a journalist in part justified his presence on Capitol grounds on January 6, 2021, he did not press the motion. He pleaded guilty because he is guilty.

## IV.     The PSR Recommendations

The initial PSR submitted by the probation officer calculated a Guidelines range of 0 to six months for Mr. Shroyer, with a fine range of $500 to $9,500. PSR, para. 7. The defendant notes that even at this low Guidelines range, the PSR arguably overstates Mr. Shroyer's culpability. A formal objection was not filed because it did not seem material.

Upon information and belief, Mr. Shroyer has been given reason to believe the Government may seek a period of incarceration in this case. Mr. Shroyer notes the overstatement as part of his general plea for mitigation.

The trespassory offense to which Mr. Shroyer pleaded carries a base offense level of four. PSR, para. 5; USSG, Section 2B2.3(a). The draft PSR calls for the addition of two points under USSG Section 2B2.3(b)(1)(A), on the theory that the offense took place "at a secure government facility." The evidence in the case shows that Mr. Shroyer did enter Capitol grounds, and, in the course of the day, made his way to the steps of the Capitol, where he stood with others as a colleague made a plea to the crowd to leave the area. The undersigned understands that "at" does not mean "in," and that standing on the stairs of a secure facility arguably places one at the facility. But this is a trespassory offense, so the enhancement should only be applicable when one trespasses by entering a secure facility. The PSR writer seems to take the position that trespassing on the grounds is the same as trespassing in a facility. The defendant suggests that this is an overreach and is not at all what the Guidelines drafters had mind when they drafted this provision.

Even if the two-point enhancement is appropriate, the draft PSR, and the plea agreement itself, contemplates a two-point reduction for acceptance of responsibility. PSR, para. 6. Mr. Shroyer's offense level is, therefore, four.

## V.    Defendant's Characteristics

### A. Mr. Shroyer's Cooperation with the Investigation

By contrast to some cases arising from the events of January 6, 2021, Mr. Shroyer's case, and his conduct after the charges were filed, has been characterized by a cooperative spirit between the defense and the Government. Mr. Shroyer waived an

indictment, and agreed to plead to an information. Mr. Shroyer also responded to a request from prosecutors to permit inspection of his cell phones without a warrant, a factor prosecutors suggested would militate in his favor in the event of a plea. Finally, Mr. Shroyer sat for a proffer session with federal prosecutors, waiving his right to remain silent, and exposing himself to the risk of prosecution if he offered a false statement. After inspecting the contents of his phone, federal investigators questioned Mr. Shroyer about the messages, what he knew about the planning of events leading up to and including January 6, 2021, and his awareness of other participants in illegal activity that day. Mr. Shroyer had nothing of value to offer prosecutors in their larger efforts to determine whether the events of January 6, 2021, were part of a larger scheme, or were, rather, as Mr. Shroyer saw it, nothing more than a protest turned into a riot.

Mr. Shroyer's cooperation with investigators is all the more remarkable as he could easily have been professionally and personally disposed to refuse even to speak to federal agents. He is the afternoon host of a daily program on Inforwars, a media enterprise known to be no friend to the Government and widely characterized by some as "far right." Mr. Shroyer is a vocal and vigorous critic of the federal Government and believed, in late 2020 and early 2021, that the 2020 election had been "stolen," a belief fostered to a significant extent by no less a personage than then-president Donald Trump.

Mr. Shroyer claims no justification for his conduct simply because he believed the president. But when Mr. Shroyer appeared at the Capitol on January 6, 2021, he wore two hats: one was that of outraged citizen who believed that an election had been rigged, the other as full-time journalist and commentator who sought a front-row seat at an historic event.

Mr. Shroyer's acceptance of responsibility, and his cooperation with law enforcement investigators, was extraordinary.

**B      Education and Professional Life**

As defendants in federal criminal proceedings go, Mr. Shroyer is an outlier. He comes from a good and loving family, PSR, paras. 52-53, has a good education, PSR, para. 66, has maintained gainful and meaningful employment, PSR, paras. 67-69, and shows every sign of being on a trajectory suggesting nothing but a successful future, PSR, paras. 71-79. His childhood was unremarkable, sounding, at times, almost idyllic. PSR, paras. 52-57. He will soon become a father. It is a fair statement to say that his story is an American success story. He is in good health, with no medical conditions or substance abuse issues. PSR, paras. 61-64.

**VI.      Offense Characteristics**

The events of January 6, 2021, were extraordinary, and will remain a part of the nation's history for so long as that history is studied. The Government's treatment of the riot and rioters has also been extraordinary. As this Court is well aware, more than 1,000 people have been charged thus far with charges ranging from simple trespass to seditious conspiracy. There is a temptation to tar all defendants with the same brush. It is important to recognize that the conduct here is at the low end of the culpability scale. Mr. Shroyer went to the Capitol to march in protest. He did march. He also went to provide commentary and coverage of an historic event, an event he commented on from the studios of an organization with a distinct ideological bent. But his plea and the relevant offense comment make him neither an insurrectionist, a terrorist, or even prone to

violence. He deserves a sentence at the low end of the Guidelines, in this case, a sentence of no incarceration.

**VII.    The 3553 Factors and an Appropriate Sentence**

**A.  General Deterrence**

General deterrence pertains to the effect the sentence imposed in this case will have on others. Put another way, will this sentence promote respect for the law.

This case should not be considered in isolation from the hundreds of other prosecutions – more than 1,000 to date – undertaken by the Justice Department of those identified as participants in the riot on January 6, 2021. Indeed, hardly a week passes without some new arrest as federal officials continue to study available video evidence to identify each and every person who violated to the law at the Capitol that day. More than two-and-one-half years have passed since the riot, yet dogged prosecutors continue to bring new cases. One would have to be deaf, dumb and blind not to realize that insofar as the federal Government is concerned, the events of January 6, 2021 are regarded as an intolerable insult to our institutions. The Government has made clear that the disruption of official proceedings in this manner will not be tolerated ever again. The magnitude and scope of January 6 prosecutions vitiates the general deterrent value of a long sentence in this particular case. Indeed, too long a sentence will undermine the very factor – respect for the law – critical to general deterrence.

**B.  Rehabilitation**

Mr. Shroyer is not in need of any of the rehabilitative services available in the Bureau of Prisons. Indeed, incarceration of Mr. Shroyer might strain limited resources put to better use offering services to an inmate in need.

### C. Protection of Society

Mr. Shroyer poses no danger to society, yet there is no disputing we live in dangerous times. Partisan divisions run deep, and, on the cusp of the 2024 election cycle, the airwaves are already filled with vitriolic claims and counterclaims about who did what to whom on January 6, 2021. The country would be well served by moving on from the endless spectacle of prosecution of folks merely because they can be prosecuted; yet each week, there are new indictments brought against those who participated in any way in the riot at the Capitol. Candidly, the Department of Justice's jihad relative to that day does far more damage to the republic than anything Mr. Shroyer did on January 6, 2021.

### D. Specific Deterrence

The most difficult issue for Mr. Shroyer in this case is the specific deterrence. As the PSR notes, at the time he appeared at the Capitol on January 6, 2021, he was under federal supervision in a pretrial diversionary program arising from his prosecution for disorderly and disruptive conduct on Capitol grounds on December 9, 2019, when he disrupted an impeachment proceeding chaired by House Judiciary Chairman Jerry Nadler. A condition of that program was that he not step foot on Capitol grounds. He did so. Again. A sentencing court could be tempted to impose incarceration for no other reason than this.

Mr. Shroyer urges the court not to do so.

In terms of progressive discipline, Mr. Shroyer has lost the benefit of a pre-trial diversionary program. He will soon be a convicted misdemeanant. A prolonged period of

supervision – in this, the maximum of one year -- will provide him all the reminder he needs to avoid another violation of the law, especially as the nation approaches another fraught electoral season.

If punishment beyond supervision is warranted, a fine would serve the purposes of justice. Our prisons are chock full of rioters.

`        **VIII-.   Conclusion**

Mr. Shroyer requests a sentence of supervised release.

DEFENDANT SHROYER

By  /s/ NORMAN A. PATTIS /s/
      383 Orange Street
      New Haven, CT 06524
      203.393.3017 (phone)
      203.393.9745 (fax)
      pattis@pattislaw.com
      ct13120

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the above-captioned date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ Norm Pattis /s/*

8

THE DEFENDANT
/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & SMITH, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ Norman A. Pattis /s/