UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 1:21-cr-00542-TJK |
| v. | : | |
| | : | |
| JONATHAN OWEN SHROYER, | : | September 10, 2023 |

**MR. SHROYER'S REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**

In a sentencing memorandum that can most charitably be described as chilling, the Government recommends a sentence of 120 days imprisonment based largely on what Mr. Shrover said on, during and after the riot at the Capitol on January 6, 2021. The memorandum represents a low-water mark in the Government's prosecution of January 6 cases, taking direct aim at freedom of speech. It seeks to penalize Mr. Shroyer for his viewpoints, claiming, apparently, that his views are relevant offense conduct that must be considered in crafting a sentence sufficient, but not greater than necessary, to punish the crime to which Mr. Shroyer pleaded guilty – a single misdemeanor count of Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. Section 1752(a)(1).

The Government's sentencing memorandum is devoid of any discussion of such cases as *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)(telling a police officer "you are a God damned racketeer" and a "damned fascist" is protected speech); *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1960)("mere abstract teaching of the moral propriety or even necessity for resort to force and violence" protected); *Hess v. Indiana*, 414 U.S. 105 (1973); *Noto v. United States*, 367 U.S. 290 (1961); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982); and, *Counterman v Colorado*, 600 U.S. ___ (2023.).

1

Mr. Shroyer renews his requests for a sentence involving no incarceration and contends that the two-plus years he has spend on supervised pre-trial release, a period marked by full compliance with the conditions of his release, is sufficient to serve the purposes of sentencing. Given the Government's shocking attempt to use protected speech in this case as a sentencing factor, special leniency is required to deter the Government from overreaching in similar cases. This has become, based on the Government's sentencing memorandum, precisely the sort of case that the Supreme Court warned about last term in *Counterman.* "Prohibitions on speech have the potential to chill, or deter, speech outside their boundaries," *Counterman,* slip. op. p. 6.

**A. The Offense Conduct and the Speech**

The Government asserts that "Shroyer helped create January 6." Government's Sentencing Memorandum, p. 1. In the months prior to January 6, 2021, he "spread election disinformation paired with violent rhetoric to hundreds of thousands, if not millions, of viewers." Id. Before marching to the Capitol on the 6th, he chanted "death to tyranny! Death to tyrants!" Id.  He even chanted "1776!" as he marched toward the east steps of the Capitol.

This is sound and fury signifying nothing.

Mr. Shroyer, and every person capable of speaking in the United States, has a right to utter the speech Mr. Shroyer used. That the Government would suggest otherwise is a frightening commentary on our times.

None of the utterances recited by the Government and attributed to Mr. Shroyer are prohibited speech. And the Government has made no serious effort to prove that Mr.

Shroyer's utterances packed the inculpatory punch of prohibited speech, whether that be incitement, a true threat, or conspiracy to commit another crime. Unlike other defendants appearing before this Court in the context of the January 6 riot, Mr. Shroyer has not been charged with conspiracy to engage in seditious conspiracy. His words cannot be twisted into circumstantial evidence of an intent to oppose the authority of the Government by force. Neither has he been charged with conspiracy to obstruct an official proceeding. These charges would be hard to prove given the fact that when he stood on the Capitol steps with his entourage, Person One was using a megaphone to urge people to stand down and turn away from the Capitol.

"As we said in *Noto v. United States*, 367 U.S. 290, 297-298 (1961), 'the mere abstract teaching … of the moral propriety or even necessity for a resort to force and violence, is not the same as preparing a group for violent action and telling it to such action.'" *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969). Similarly, in *Watts*, *Noto* and *Claiborne*, the Supreme Court made clear that speech, even raucous speech, especially about public affairs, is vital to the republic.

Obviously, the *Counterman* decision was a "true threats" case and not an incitement case, but the rationale supporting the *Counterman* decision applies even more forcefully in a case involving incitement and political speech. In *Counterman*, the Court concluded that proof of a true threat must involve some subjective understanding on the part of a person uttering the comment that the speech is, in fact, threatening. While rejecting a requirement of a specific intent to threaten, the Court concluded that a subjective awareness of recklessness was required. As the Court noted, "[T]he First Amendment … still demand[s] a subjective mental-state requirement shielding some true

threats from liability. The reasons related to what is often called a chilling effect. Prohibitions on speech have the potential to chill, or deter, speech outside their boundaries." *Counterman*, slip. op., p. 6. "Like threats, incitement inheres in particular words used in particular contexts: Its harm can arise even when a clueless speaker fails to grasp the expression's nature and consequences. But still, the First Amendment precludes punishment, whether civil or criminal, unless the speakers' words were 'intended' (not just likely) to produce imminent disorder. *Hess v. Indiana*, 414 U.S. 105, 106 (1973)(per curiam); see *Brandenburg*, 395 U.S. at 447; *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 927-929 (1982). That rule helps prevent a law from deterring 'mere advocacy' of illegal acts – a kind of speech falling within the First Amendment's core. *Brandenburg*, 395 U.S. at 449." *Counterman*, slip. op., p. 8.

The Government's sentencing memorandum is a shocking effort to criminalize dissent and warrants a stiff rebuke from this Court. Mr. Shroyer has every right to believe, and to assert to this very day, that the 2020 election was stolen. He can assert that the Justice Department is in the thrall of shadowy deep state figures intent on stifling freedom of speech and crushing dissent in the name of some crippling form of conformity. He can declare that President Biden is the devil incarnate, a Chinese prop placed in the White House by globalist forces. He can assert that the country stands on the precipice of disaster. He can call folks to the barricades and warn about the need to use force to protect American liberties. He can even proclaim that the Justice Department is attempting through this, and related prosecutions, to criminalize dissent. All of this falls well within the long-established protected contours of freedom of speech, even speech called extremist by those claiming a smug orthodoxy.

The Government's attempt to use Mr. Shroyer's speech as relevant offense conduct is misapplied. It is anathema in the United States to permit to Government to rely on protected speech in whole or in part to cause a person harm. *Mt. Healthy City School Board of Education v. Doyle*, 429 U.S. 274 (1977). Mr. Shroyer contends that the importance of protecting political speech, the right to assembly and the right to petition for the redress of grievances creates a safe harbor in cases such as these for protected activity: If mere advocacy of illegal acts is protected, how can rallying cries at a protest be used to enhance a penalty? However broadly the net of relevant offense conduct may be cast in criminal sentencings involving other contexts, e.g., the planning of a murder, a drug transaction, a robbery, in case involving core First Amendment activities, the Court can and must draw a line the Government cannot cross.

**B.  A Journalist Pleaded Guilty for Conduct Committed While Doing His Job**

Mr. Shroyer pleaded guilty without the Court's having to rule on his motion to dismiss, a motion to dismiss predicated, in part, on his status as a journalist, and a requirement that the Justice Department seek express authorization from the Attorney General before prosecuting a member of the news media. Docket Entry 3, see C.F.R. Section 50.10(f)(3)[1]. He entered the plea because he came to understand that whatever

---

[1] An Addendum order by a Magistrate Judge notes the following unusual factors: "On August 19, 2021, the undersigned had a telephone conference with representatives of the USAO regarding the Complaint. The undersigned inquired as to whether: - the Department of Justice considered Shroyer to be a member of the media; - the USAO had complied with Department of Justice policies regarding the arrest of media members; and - the Assistant U.S. Attorneys would memorialize the answers to these two questions in the Complaint, consistent with their prior practice. The USAO represented that it had followed its internal guidelines but was unwilling to memorialize that or explain the bases for its determinations. The Court issues this addendum Case 1:21-cr-00542-TJK Document 3 Filed 08/24/21 Page 5 of 9 6 opinion in response to the USAO's break with prior practice, and to ensure that the judicial record accurately

his status as a journalist, he was under a previous Court order incident to his deferred prosecution agreement in an earlier case not to enter onto Capitol Grounds. This distinguishes him from other members of the cadre with whom he marched on January 6, 2021, none of whom have been arrested.

As noted in his primary sentencing submission, Mr. Shroyer pleaded guilty because he is guilty – he entered the grounds. He waived an indictment. He voluntarily gave federal agents his telephones as they searched for evidence relating to others about the planning of, and scope of, events at the Capitol on January 6, 2021. After agents had had a chance to study the contents of Mr. Shroyer's phones, he voluntarily sat for a proffer session with federal agents, answering truthfully the questions put to him. He didn't need to do any of this. But he recognized his mistake and sought to make amends through his conduct. He was never asked, nor was he required to, relinquish his right to speak out on matters of public concern. The Government's effort here to punish him for his speech sets a dangerous precedent.

**C. Mr. Shroyer's Community Service**

Mr. Shroyer did complete community service hours incident to his deferred prosecution agreement arising from an earlier. He submitted a spreadsheet to federal officials only to learn he was two hours short of the required total.

---

reflects: 1) the conversations between the Court and the USAO; and 2) the undersigned's understanding of the steps taken by the Department to comply with 28 C.F.R. § 50.10." At least one Circuit Court of Appeal has recognized that the rights of citizen bloggers are clearly established. *Villarreal v. City of Laredo*, 17 F. 4th 532 (5th Cir., 2021)(the First Amendments various guarantees are clearly established law in the context of claims for qualified immunity in suits arising under 42 U.S.C. Section 1983)..

As reflected in the exhibits attached to this memorandum, Mr. Shroyer submitted a worksheet, through counsel, to AUSU Andy Wang and AUSA Edward Dunn, on February 5, 2021, together with a request for dismissal of the Superior Court case. Exhibit A. Mr. Wang wrote back noting that Mr. Shroyer was two hours short, and that, in any case, the Government would not dismiss. Exhibit B. Mr. Shroyer thereafter completed the two additional hours. Exhibit C.[2]  Given the Government's decision not to dismiss the underlying charged consistent with the DPA, the paperwork showing completion of the hours was never acted upon by a Court.

Mr. Shroyer took his obligation under the agreement seriously.

**D. Conclusion**

Mr. Shroyer renews his request for a sentence involving no incarceration.[3] This is less than what the Government asks for.  Mr. Shroyer suggests that such a sentence would promote respect for the law, in part by reminding the public, and apparently the Government, that speech, even violent and vituperative speech, is protected by the First Amendment. That message apparently needs reinforcing as we approach the 2024 election cycle.

---

[2] Mr. Shroyer will address the Court about this at the time of sentencing.
[3] That is consistent with the recommendation of the United States Probation Officer who drafter the PSR in this case.

                                              THE DEFENDANT

                                              <u>/s/ Norman A. Pattis /s/</u>
                                              NORMAN A. PATTIS, ESQ.
                                              PATTIS & SMITH, LLC
                                              383 Orange Street
                                              New Haven, CT 06511
                                              Tel:  (203) 393-3017
                                              Fax: (203) 393-9745
                                              npattis@pattisandsmith.com

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

                                              <u>/s/ Norman A. Pattis /s/</u>