UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | 1:21-cr-00542-TJK |
| v. | : | |
| | : | |
| JONATHAN OWEN SHROYER, | : | September 19, 2023 |

## MR. SHROYER'S MOTION FOR RELEASE PENDING APPEAL

Mr. Shroyer, throughout counsel, moves, pursuant to 18 U.S.C. Section 3143(b), for release pending appeal of his sentence in the instant action.

### A. The Statutory Requirements For Release Pending Appeal

18 U.S.C. Section 3143(b) permits a District Court to order the release of a person sentenced to a term of imprisonment pending appeal if the court finds the following conditions are satisfied:

B. "by clear and convincing evidence the person is not likely to flee or pose a danger to the safety of any other person of the community if released …"
C. "that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in—
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence that to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."

### B. Mr. Shroyer Is Neither A Flight Risk Nor A Danger To The Community

During the more than two years this case was pending, from the time of arrest through sentencing, Mr. Shroyer was subject to pretrial supervision. There is no indication that he was anything other than fully compliant with the conditions of his release. He appeared as ordered at each audio pretrial and in-person court proceeding.

1

He has substantial ties to his community in that he owns a home and has a newborn child on the way in January 2024. He contends that this Court can and should find by clear and convincing evidence that he is not a flight risk.

At the time of sentencing, and during the pendency of the instant case, no evidence was developed, and no argument was advanced, that Mr. Shroyer posed a risk of danger to anyone or to the community at large. He is a public figure, broadcasting daily from the Infowars platform, and, given the politically charged nature of his commentary and times in which we live, one would have expected evidence of a potential threat to arise if, in fact, there were any such threat. He contends that this Court can and should find by clear and convincing evidence that he poses no danger to any individual or the community at large.

The conditions of Section 3143(b)(B) are satisfied.

### C. Mr. Shroyer's Appeal Is Not Intended To Procure Delay And Raises A Substantial Issue On Which He Is Likely To Succeed

Mr. Shroyer was sentenced to 60 days of imprisonment on his one count of conviction. The Government asked for 120 days; pretrial services recommended a sentence of two years of probation. Mr. Shroyer also entered a plea agreement in this case and agreed not to take an appeal unless the Court imposed an unlawful sentence. He concedes in this case that the sentence imposed falls within the Guidelines range, but contends that the factors the Court relied upon in sentencing him against the weight of the recommendations of pretrial services results in an unlawful sentence.

The easy thing for Mr. Shroyer to do would be to surrender to incarceration immediately. In such a case, he would likely serve his sentence and be home in time to

welcome his newborn into the world. Delay, should he fail on appeal and be required to serve his sentence, will cost him valuable time with his child. He is not seeking a delay for the sake of delay.

The Government agreed to a plea to misdemeanor trespass and then argued at sentencing that Mr. Shroyer's speech before, during and after the trespass constituted relevant offense conduct. The Court in two instances referred to Mr. Shroyer's speech as grounds for imposing a sentence of incarceration. The Court referred to Mr. Shroyer as not merely a trespasser, but as a person who help foment the anger of the crowd assembled on January 6, 2021 by leading chants. He chanted "USA" and "Death to Tyrants," common chants of many a political rally, and, in and of themselves, protected speech. Based on his post-riot comments, the Court also concluded that it had doubts about whether Mr. Shroyer had "disavowed" what happened on January 6, 2021. These comments were not relevant to proof of an element of the offense of conviction but were considered as relevant offense conduct.

The Government, of course, argued far more than the Court referred to in its comments, contending that given Mr. Shroyer's vast viewership he was one of the instigators of the January 6 riots. It also declaimed against his spread of "disinformation." In particular, the Government asserted that "Shroyer helped create January 6." Government's Sentencing Memorandum, p. 1. In the months prior to January 6, 2021, he "spread election disinformation paired with violent rhetoric to hundreds of thousands, if not millions, of viewers." Id. Before marching to the Capitol on the 6th, he chanted "death to tyranny! Death to tyrants!" Id.  He even chanted "1776!" as he marched toward the east steps of the Capitol.

The cold record makes it difficult to assess what role, if any, the Government's argument that protected speech could serve as relevant offense conduct played in the Court's assessment of an appropriate sentence.

On appeal, Mr. Shroyer will contend that reliance on protected speech as relevant offense conduct in the context of a political rally turned riot sets a dangerous and chilling constitutional precedent. He contended at sentencing, and will contend on appeal, the use of protected speech in this context fulfills the dark prophecy warned against by the United States Supreme Court in its recent true threats case, *Counterman v Colorado*, 600 U.S. ___ (2023.).

"As we said in *Noto v. United States*, 367 U.S. 290, 297-298 (1961), 'the mere abstract teaching … of the moral propriety or even necessity for a resort to force and violence, is not the same as preparing a group for violent action and telling it to such action.'" *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969).

Obviously, the *Counterman* decision was a "true threats" case and not an incitement case, but the rationale supporting the *Counterman* decision applies even more forcefully in a case involving incitement and political speech. In *Counterman*, the Court concluded that proof of a true threat must involve some subjective understanding on the part of a person uttering the comment that the speech is, in fact, threatening. While rejecting a requirement of a specific intent to threaten, the Court concluded that a subjective awareness of recklessness was required. As the Court noted, "[T]he First Amendment … still demand[s] a subjective mental-state requirement shielding some true threats from liability. The reasons related to what is often called a chilling effect. Prohibitions on speech have the potential to chill, or deter, speech outside their

4

boundaries." *Counterman*, slip. op., p. 6. "Like threats, incitement inheres in particular words used in particular contexts: Its harm can arise even when a clueless speaker fails to grasp the expression's nature and consequences. But still, the First Amendment precludes punishment, whether civil or criminal, unless the speakers' words were 'intended' (not just likely) to produce imminent disorder. *Hess v. Indiana*, 414 U.S. 105, 106 (1973)(per curiam); see *Brandenburg*, 395 U.S. at 447; *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 927-929 (1982). That rule helps prevent a law from deterring 'mere advocacy' of illegal acts – a kind of speech falling within the First Amendment's core. *Brandenburg*, 395 U.S. at 449." *Counterman*, slip. op., p. 8.

The issue of the use of protected speech as relevant conduct in a federal sentencing for conduct at a political rally that turned in to a riot is one of first impression. However, the Supreme Court has shown a remarkable interest in acquitted offense conduct as a sentencing factor, relisting serval certiorari petitions raising the issue. https://www.scotusblog.com/2023/05/acquitted-conduct-sentencing-returns-the-constitutionality-of-felon-disenfranchisement-and-good-behavior-in-capital-sentencing/material. Mr. Shroyer will argue that, just as in the case of acquitted offense conduct's invasion of the right to due process and the Fifth Amendment's presumption of innocence, so, too, the right to speak, to assemble and to petition for redress of grievances arising under the First Amendment should preclude the use of otherwise protected speech at a federal sentencing.

On appeal, he will not challenge his guilty plea at trial, but will ask for a remand of the sentencing hearing with direction that the Government's comments regarding protected speech be struck from the record, and that the Court not rely on such

argumentation by the Government. The current record in this case sets chilling precedent: A right-wing journalist appears to have been sentenced to a imprisonment, at least in part, because of his political views as expressed at a rally and thereafter.

Mr. Shroyer asserts he has good reason to be optimistic about his chances on appeal. The First Amendment, he believes, is not yet dead, try though the Justice Department might to smother it.

In sum, Mr. Shroyer contends that his sentence is substantively unreasonable in violation of federal law.

It is unlikely that the appeal will be decided before Mr. Shroyer's sentence is satisfied if he is required to report to the Bureau of Prisons before the appeal is decided.

The conditions of Section 3143(b)(C) are satisfied.

**C.  Conclusion**

For the reasons stated herein, Mr. Shroyer asks this Court to order that he not be required to report for service of his sentence until he can perfect his appellate rights. He is this day filing a notice of appeal.

THE DEFENDANT

/s/ Norman A. Pattis /s/
NORMAN A. PATTIS, ESQ.
PATTIS & ASOOCIATES, LLC
383 Orange Street
New Haven, CT 06511
Tel:  (203) 393-3017
Fax: (203) 393-9745
npattis@pattisandsmith.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Norman A. Pattis /s/