UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JONATHAN OWEN SHROYER,<br><br>*Defendant*. | Criminal Action No. 21-542 (TJK) |

## MEMORANDUM ORDER

Owen Shroyer pleaded guilty to entering or remaining in a restricted building or grounds for his conduct at the U.S. Capitol on January 6, 2021. The Court sentenced him to 60 days' imprisonment, one year of supervised release, and $500 in restitution. Shroyer appealed that sentence, and he now asks this Court to defer his incarceration until his appeal is adjudicated. He says his appeal raises a substantial legal question: whether the Court "smothered" the First Amendment by considering things he said during and after his offense in selecting the appropriate sentence. But no court has ever interpreted the First Amendment the way he suggests—and he provides no good reason why one should. Because he has not identified a substantial question that his appeal will present, the Court will deny his motion.

**I.   Background**

    **A.   Shroyer's Offense and Guilty Plea**

The government charged Shroyer with four offenses arising from the events at the Capitol on January 6, 2021. *See* ECF No. 5. On that day, perhaps alone among those charged, Shroyer was already being prosecuted—in the Superior Court of the District of Columbia—for allegedly interfering with proceedings at the Capitol. In late 2019, he allegedly disrupted a House Judiciary Committee meeting, for which he was charged with two offenses. *See* ECF No. 46 at 3. To resolve that case, Shroyer had signed a deferred prosecution agreement, in which he agreed not to violate

any laws and promised not to "utter loud, threatening, or abusive language, or to engage in disorderly or disruptive conduct" on the Capitol grounds with the intent to disrupt congressional proceedings. *See id.* (quotation omitted). That agreement was still in effect on January 6, 2021. *See id.* at 3–4.

But Shroyer *did* violate the law on January 6, 2021, and in pleading guilty to entering or remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1), he admitted the following facts. *See* ECF Nos. 38–39. A joint session of Congress met on January 6, 2021, to certify the Electoral College vote for the 2020 presidential election. ECF No. 39 ¶ 3. On that day, the exterior plaza of the Capitol was closed to the public. *Id.* ¶ 2. But crowds gathered nearby and headed for the Capitol grounds. *See id.* ¶ 12. Shroyer was among the crowds, and he addressed them with a megaphone, encouraging them not to accept the election of President Biden, whom he called a child molester and an agent of the Chinese Communist Party. *See id.* ¶¶ 12–13. Shroyer then entered the Capitol grounds. *See id.* ¶ 14. In doing so, he breached a restricted area and the grounds that were delineated in his deferred prosecution agreement. *See id.* He stood on the Capitol's west front and led hundreds of people in chanting "USA! USA! USA!" *Id.* Next, he walked to the Capitol's north side, passing downed barricades and a sign that read "Area Closed." *Id.* ¶ 15. Again, he stood with hundreds of others and led them in chants such as "USA!" and "1776!" *Id.* ¶ 16. Thus, as he admitted, he "knowingly entered and remained on restricted grounds without lawful authority to do so." *Id.* ¶ 19.

### B.     Shroyer's Sentencing Hearing

The Court sentenced Shroyer on September 12, 2023. There, the Court determined—and the parties agreed—that the applicable Sentencing Guidelines range was zero to six months' imprisonment. Sent'g Hrg. Tr. at 6. That was because the total offense level was 4 and Shroyer's criminal-history category was II. *Id.*; *see also* U.S. Sent'g Guidelines Manual § 5A (U.S. Sent'g

2

Comm'n 2021) ("U.S.S.G."). The Guidelines also provided for a potential one-year term of supervised release. *See* U.S.S.G. §§ 5D1.1(b), 5D1.2(a)(3).

The government asked the Court to sentence Shroyer to 120 days' imprisonment, one year of supervised release, 60 hours of community service, and $500 in restitution. ECF No. 46 at 1. To support its recommendation, the government cited Shroyer's "rhetoric in advance of January 6," which it characterized—because Shroyer hosts a show broadcast on the internet—as his "stok[ing] the flames of a potential disruption of the certification vote by streaming disinformation . . . to thousands, perhaps millions." *See id.* at 5–7 (capitalization altered and emphasis omitted). It also relied on statements he made on and after January 6. For instance, it accused Shroyer of chanting "Death to tyrants!" "Stop the steal!" and "Trump won!" as he approached the Capitol grounds. *See id.* at 8–9. It noted that, while in the restricted area, Shroyer led others in chanting "USA!" and "1776!" as he had admitted in his statement of offense. *See id.* at 10–12. And it noted that, a few months after January 6, Shroyer said on his show, "We should have been proud of what happened on January 6. But they stole that from us." *Id.* at 14 (quotation omitted).

Shroyer asked the Court to sentence him only to supervised release or, alternatively, to fine him. *See* ECF No. 48 at 7–8. He emphasized that he had cooperated with investigators and argued that his case presented no need for deterrence, rehabilitation, or protecting society from further offenses. *See id.* at 3–8. At his sentencing hearing, he objected to the government's "focus," as he put it, on his "speech acts as aggravating factors." *See* Sent'g Hrg. Tr. at 27–31. He argued that his statements were protected under the First Amendment and claimed that punishing him for speaking would be improper. *See id.* at 27–29.

The Court sentenced Shroyer to 60 days' imprisonment, one year of supervised release, and $500 in restitution. *See* ECF No. 50. In determining the appropriate sentence, the Court relied

3

on some—but not all—of the speech-related conduct the government identified. For instance, it expressly assigned no weight to Shroyer's statements before January 6, 2021, that the government argued had inflamed his audience. The Court explained that Shroyer had a First Amendment right to claim—no matter to how many people—that the 2020 election was stolen and that these statements added little if anything to the nature and circumstances of the offense to which he pleaded guilty. *See* Sent'g Hrg. Tr. at 13–15.

The Court relied on two aspects of Shroyer's speech-related conduct to determine his sentence. First, it noted that he "play[ed] a role in amping up the crowd on the Capitol steps that day." Sent'g Hrg. Tr. at 43. But it also explained that the significant aspect of that conduct was its context—not its content. *See id.* at 30. In other words, the reason the Court relied on Shroyer's chanting on the Capitol steps was that in doing so, he exacerbated a highly treacherous situation for Capitol police officers, Congress, and the peaceful transfer of presidential power. Second, the Court concluded that Shroyer was not fully remorseful because, despite his guilty plea and his statement at sentencing, he publicly expressed pride well after January 6 about what happened at the Capitol that day. *See id.* at 43. Even so, the Court's calculation of the appropriate sentencing range gave Shroyer credit for accepting responsibility for his offense. *See id.* at 6.[1] The Court also relied on the fact that Shroyer's conduct at the Capitol on January 6 violated his deferred prosecution agreement resolving his *other* case stemming from his conduct there, underscoring the need to deter him from engaging in additional criminal conduct. *See id.* at 43.

---

[1] Indeed, had the Court not given Shroyer credit for accepting responsibility, his total offense level would have been 6. *See* U.S.S.G. § 3E1.1. With a total offense level of 6 and a criminal-history category of II, the applicable Guidelines range would have been higher: 1 to 7 months' imprisonment. *See id.* § 5A.

### C. Shroyer's Motion

Shroyer appealed the Court's sentence, *see* ECF No. 53, and he now moves for release from custody pending appeal, ECF No. 52. He says the Court considered statements that he deems "common chants of many a political rally" and, "in and of themselves," protected by the First Amendment. ECF No. 52 at 3. He also expressed concern that the Court—despite its explicit contrary statements at the sentencing hearing—was influenced by the government's references to his other statements. *See id.* at 3–4. For those reasons, he claims, his sentence is "substantively unreasonable" under the First Amendment. *See id.* at 6. And he thinks his appeal will likely succeed because the First Amendment "is not yet dead." *See id.* Thus, under 18 U.S.C. § 3143(b), he asks the Court to delay his obligation to report for sentencing until his appeal resolves. *Id.*

The government opposes his motion for two reasons. ECF No. 55. First, it argues the parties' plea agreement doubly forecloses this motion. *See id.* at 1–2. Second, it says the First Amendment does not bar the Court from basing part of its sentence on speech relevant to offense conduct. *See id.* at 3–6.

Shroyer filed a reply in support of his motion. ECF No. 56. But under Local Rule 47(d), he had "seven days after service of the memorandum in opposition" to file it. The government filed its memorandum on September 27, 2023, under the briefing schedule the Court set. *See* ECF No. 55; Min. Order of Sept. 20, 2023. Thus, Shroyer's reply deadline was October 4, 2023, and he did not file his reply until several days later. *See* ECF No. 56.

## II. Legal Standard

After a defendant is convicted and "sentenced to a term of imprisonment," the Court "shall" order him detained unless enumerated conditions are met. *See* 18 U.S.C. § 3143(b)(1). As relevant here, the Court must order Shroyer's release if it finds three conditions met. The first condition is that "clear and convincing evidence" shows Shroyer "is not likely to flee or pose a danger to the

5

safety of . . . the community if released." *See id.* § 3143(b)(1)(A).  The second condition is that Shroyer's "appeal is not for the purpose of delay." *See id.* § 3143(b)(1)(B).  The third condition is that his appeal "raises a substantial question of law . . . likely to result in . . . a reduced sentence to a term of imprisonment less than the . . . expected duration of the appeal process." *See id.*[2]

As for the third condition, a substantial question of law is "a close question or one that very well could be decided the other way." *United States v. Perholtz*, 836 F.2d 554, 556 (D.C. Cir. 1987).  A defendant has the burden to show that his appeal presents a substantial question. *United States v. Ball*, 962 F. Supp. 2d 11, 16 (D.D.C. 2013).  This standard is demanding, and it is not satisfied just because "the issue raised is novel and there is a contrary interpretation of the law." *See United States v. Libby*, 498 F. Supp. 2d 1, 4 n.4 (D.D.C. 2007).  On the other hand, uniform caselaw rejecting the defendant's position can establish that the defendant has not identified a substantial legal question. *See United States v. Adams*, 200 F. Supp. 3d 141, 146 (D.D.C. 2016).

## III. Analysis

Shroyer has not approached his burden to show that his appeal raises a substantial legal question.  Thus, the Court will deny his motion on that basis without considering any other statutory requirement or the effect of his plea agreement.[3]

---

[2] Section 3143(b)(1)(B)(iii) also provides for release if the appeal is likely to result in a "sentence that does not include a term of imprisonment."  That condition is irrelevant here because the Court would have sentenced Shroyer to a term of imprisonment even if it could not consider any of his speech-related conduct, largely because in committing his offense on January 6, he violated his deferred prosecution agreement, which underscored the need to deter him from engaging in additional criminal conduct.

[3] Still, the Court notes that by signing his plea agreement, Shroyer purported to waive any appeal of "the manner in which [his] sentence was determined, except to the extent the Court sentence[d] [him] above the statutory maximum or guidelines range determined by the Court." ECF No. 38 ¶ X(d).  And the Court has sentenced him neither above the statutory maximum nor the applicable Sentencing Guidelines range.

An extraordinary claim underlies Shroyer's motion. He acknowledges his guilt and does not suggest the First Amendment gave him the right to shout into a megaphone while on restricted Capitol grounds on January 6. But he says some of his conduct cannot be considered "at a federal sentencing" because, in some other context, it would be protected political speech. *See* ECF No. 52 at 5. That claim is extraordinary because, in free-speech questions, context is everything.[4]

To select an appropriate sentence for Shroyer, the Court had a statutory duty to consider, among other things, "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). In his motion, Shroyer provides no authority for the notion that it was unlawful or improper for the Court to have relied on the encouragement he gave the mob around him when fashioning his sentence. His position amounts to the claim that two trespassers on Capitol grounds on January 6—one who stood silently and the other who, steps from the Capitol building, shouted slogans into a megaphone that encouraged a mob of other trespassers—must be treated the same for sentencing purposes. That is nonsense.

To begin, "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing simply because those beliefs and associations are protected by the First Amendment." *Dawson v. Delaware*, 503 U.S. 159, 165 (1992). In *Dawson*, the Court identified a First Amendment problem because prosecutors had introduced evidence of only the defendant's racist "abstract beliefs," perhaps simply hoping "the jury would find these beliefs morally reprehensible." *See id.* at 166–67. But it acknowledged that "evidence

---

[4] *See, e.g.*, *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 637 n.7 (1985) (acknowledging that speech made in an advertisement "would be fully protected speech" if made "in another context"); *Tao v. Freeh*, 27 F.3d 635, 639 (D.C. Cir. 1994) (explaining that whether a public employee's speech is protected by the First Amendment "depends on its content, form, and context"); *Watts v. United States*, 394 U.S. 705, 708 (1969) (explaining that "context" was necessary to distinguish "political hyperbole" from a true threat).

7

concerning a defendant's associations might be relevant in proving other aggravating circumstances." *Id.* at 166. And in another case, the Court "held that it was permissible for the sentencing court to consider the defendant's racial animus in determining whether he should be sentenced to death" for a racially motivated murder. *See Wisconsin v. Mitchell*, 508 U.S. 476, 486 (1993) (citing *Barclay v. Florida*, 463 U.S. 939 (1983)). Thus, the question is not whether the Court may consider speech or beliefs that can trigger First Amendment protections, but whether that speech or those beliefs are "relevant to establish a forbidden animus or intent or . . . are relevant to another sentencing factor." *United States v. Schmidt*, 930 F.3d 858, 864 (7th Cir. 2019).[5]

The relevance of Shroyer's chants to the crowd on the steps of the Capitol to the nature and circumstances of his offense could hardly be clearer. Shroyer chanted *while* he committed the offense, just steps away from several entrances to the Capitol building, surrounded by a mob that eventually broke into the building, endangered members of Congress, and obstructed their ability to certify the Electoral College vote. The encouragement Shroyer gave the mob at that moment was something the Court could consider—more than that, had a *duty* to consider—in arriving at an appropriate sentence for him, regardless of the political content of that encouragement.[6]

No case Shroyer's motion mentions casts doubt on this commonsense conclusion or otherwise helps him meet his burden to identify a substantial legal question raised by his appeal. His motion cites only four cases: *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (per curiam); *Hess v. Indiana*, 414 U.S. 105 (1973) (per curiam); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886

---

[5] Indeed, Shroyer's belated reply brief acknowledges this. Citing *Barclay*, he says "[p]rotected speech and activity must bear some relationship to the offense conduct." ECF No. 56 at 3.

[6] In a somewhat similar context, in assessing the nature and circumstances of a defendant's offense for pretrial detention purposes, courts have routinely considered whether a January 6 defendant "encourage[d] other rioters' misconduct." *See, e.g.*, *United States v. Chrestman*, 525 F. Supp. 3d 14, 27 (D.D.C. 2021).

(1982); and *Counterman v. Colorado*, 600 U.S. 66 (2023).[7] And he finds no support in any of them. Those cases address the circumstances under which speech can satisfy an essential element of a criminal offense or tort claim. In *Brandenburg*, the defendant was charged with broadcasting violent opinions forbidden by state law. *See* 395 U.S. at 444–45. In *Hess*, the defendant was charged with disorderly conduct for using vulgar language. *See* 414 U.S. at 105–07. In *Claiborne Hardware*, the plaintiff sought to hold the defendant liable for speeches that used violent imagery. *See* 458 U.S. at 926–29. In *Counterman*, the defendant was charged with repeatedly sending messages that caused the recipient serious emotional distress. *See* 143 S. Ct. at 2112.

But speech is not an essential element of the offense to which Shroyer pleaded guilty. In fact, his offense is not even "related to the suppression of free expression." *United States v. Caputo*, 201 F. Supp. 3d 65, 71 (D.D.C. 2016). It requires only that he "knowingly enter[ed] or remain[ed] in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1). For that obvious reason, Shroyer's case is nothing like those he cites. The question before the Court was not whether Shroyer was guilty of an offense—he pleaded guilty, after all—but how to fashion an appropriate sentence. As explained above, because the encouragement he gave to the mob on the Capitol steps was relevant to the nature and circumstances of his offense, the Court properly considered it in doing so.

Turning to Shroyer's other statements: As explained above, the Court gave no weight to Shroyer's statements to his audience before January 6, despite the government's focus on them.

---

[7] Even if the Court were to consider the additional analysis in Shroyer's belated reply brief, doing so would not change the significance of this observation. Although he there cites more cases (alongside those mentioned above), he does that to support the same erroneous proposition: that the Court's considering his statements was "a direct assault on protected activity in an area—political speech—that is at the core of any reading of what the First Amendment protects." *See* ECF No. 56 at 11–17.

As the Court noted, Shroyer had a First Amendment right to tell his audience the 2020 election was stolen, regardless of the truth of that claim, or even whether he believed it. And, the Court also reasoned, those statements added little if anything to the nature and circumstances of the offense to which Shroyer pleaded guilty, especially given that they were mostly duplicative of his conduct and speech on January 6 itself.

That said, the Court did rely on Shroyer's post-offense statements, and one in particular in May 2021, to evaluate his remorse. A defendant's remorse—or lack thereof—is a permissible sentencing consideration under the § 3553(a) factors, especially because it can affect the need for the sentence imposed to afford adequate deterrence and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2). And the D.C. Circuit has described considerations of a defendant's remorse as "legally relevant (and constitutionally unobjectionable)." *See United States v. Jones*, 997 F.2d 1475, 1479 (D.C. Cir. 1993).[8]

Again, it is hard to imagine how the relevance of Shroyer's statements to an appropriate sentencing factor could be plainer. In May 2021, with months to reflect on what happened on January 6, Shroyer publicly derided the idea of expressing remorse for what happened that day. *See* ECF No. 46 at 1, 14. True, he later expressed remorse at sentencing, at least sufficiently for the Court to conclude that he had accepted responsibility for the offense to which he pleaded guilty. But the Court properly considered his public statement that shed light on the timeliness and cast doubt on the completeness of that remorse. Simply put, Shroyer cannot have it both ways by urging the Court to consider his statement at sentencing purportedly showing remorse but also

---

[8] Arguing otherwise would be self-defeating for Shroyer. The acceptance-of-responsibility reduction the Court applied in his Guidelines calculation *requires* remorse. *United States v. Dyce*, 91 F.3d 1462, 1469 (D.C. Cir. 1996).

urging it to disregard statements reflecting otherwise. And again, it does not matter that this statement had political overtones. As *Dawson* and *Mitchell* show, the First Amendment does not prevent courts from considering speech and associations that are otherwise protected when assessing relevant sentencing factors.[9]

For all these reasons, Shroyer has not carried his burden to identify a close question that his appeal will present. *See Perholtz*, 836 F.2d at 555; *Ball*, 962 F. Supp. 2d at 16.

## IV. Conclusion and Order

Thus, it is hereby **ORDERED** that Defendant's Motion for Release Pending Appeal, ECF No. 52, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: October 13, 2023

---

[9] Shroyer's motion also reports that his appeal will compare the Court's consideration of his speech to a court's consideration of acquitted conduct at sentencing. *See* ECF No. 52 at 5. That comparison to acquitted-conduct sentencing is puzzling for at least two reasons. First, a sentencing judge in this Circuit *may* consider acquitted conduct. *United States v. Settles*, 530 F.3d 920, 923–24 (D.C. Cir. 2008); *United States v. Khatallah*, 41 F.4th 608, 651 (D.C. Cir. 2022) (Millett, J., concurring) (recognizing that *Settles* remains good law). But to be clear, the Court did not rely on acquitted conduct here—Shroyer pleaded guilty and does not deny the facts on which the Court relied. Second, it is far from clear that the questions of whether a sentencing court can consider acquitted conduct and whether it can consider expressive conduct have anything to do with one another. Shroyer's motion does not hint at the basis of his comparison.